**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| WAYNE D. VAN NATTA and JUDY A. VAN NATTA, <br><br> Plaintiffs, <br><br> vs. <br><br> EARL DOHERTY f/k/a "Sam Doherty," TAGA HOLDINGS, INC. d/b/a "Fort Garry Pharmacy," and the said FORT GARRY PHARMACY, and CANAMERICA GLOBAL, INC., <br><br> Defendants. | No. 07-CV-2064-LRR <br><br><br><br> **ORDER** |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  SUBJECT-MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . *4*

*V.   LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.   Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.   Personal Jurisdiction Analysis* . . . . . . . . . . . . . . . . . . . . . . *7*
    *C.   Alternative Argument* . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*VI.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I. INTRODUCTION

The matter before the court is Defendant Earl Doherty's ("Doherty") Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") (docket no. 11).

## II. PROCEDURAL BACKGROUND

On September 18, 2007, Plaintiffs Wayne D. Van Natta and Judy A. Van Natta (together, the "Van Nattas") filed their first complaint in this action ("First Complaint"). In the First Complaint, the Van Nattas alleged Doherty was liable to them for negligently dispensing pharmaceutical products and asserted Taga Holdings, Inc., d/b/a "Fort Garry Pharmacy" ("Fort Garry") and CanAmerica Global, Inc. ("CanAmerica") are vicariously liable for Doherty's conduct.

On November 13, 2007, the Van Nattas filed an amended complaint ("Amended Complaint"). The only difference between the First Complaint and the Amended Complaint is the manner in which the Van Nattas refer to Doherty. In the First Complaint, the Van Nattas referred to Doherty as "Sam Doherty." In the Amended Complain, the Van Nattas refer to Doherty as "Earl Doherty f/k/a 'Sam Doherty.'"

On January 16, 2008, Doherty filed the Motion. On February 4, 2008, the Van Nattas filed a Resistance to the Motion. On February 5, 2008, Doherty filed a Reply.

## III. FACTUAL BACKGROUND[1]

The Van Nattas are husband and wife, and they are citizens of the State of Iowa. Fort Garry is in the business of dispensing pharmaceutical products and has its principal place of business located in Manitoba, Canada. CanAmerica is a business that acquired Fort Garry at some point in time and has its principal place of business in the Bahamas. Doherty is a citizen of Manitoba, Canada. Doherty is a licensed pharmacist employed by

---

[1] For purposes of the Motion, the court views the allegations in the light most favorable to the Van Nattas and affords them all reasonable inferences. *See Romak USA, Inc. v. Rich*, 384 F.3d 979, 981 (8th Cir. 2004) (reviewing motion to dismiss).

Fort Garry.

In or around September of 2005, after watching a television advertisement promoting Fort Garry, the Van Nattas called Fort Garry. Following their telephone conversation with Fort Garry, Judy Van Natta faxed her husband's prescription for trimipramine to the fax number Fort Garry provided to her. Doherty, acting in the course of his employment on behalf of Fort Garry, filled this prescription.[2] Although Wayne Van Natta was prescribed with the medication trimipramine, Doherty instead filled his prescription with trimethoprim. Trimethoprim is a different drug from trimipramine. If consumed without proper warning of its use, trimethoprim is harmful. Wayne Van Natta was unaware of Doherty's mistake and consumed the trimethoprim.

After learning Wayne Van Natta had been taking the wrong medication, the Van Nattas called Fort Garry. Doherty returned their call and indicated he had filled the prescription at issue. Doherty apologized for his mistake and offered a free three-month's supply of trimipramine to compensate for his error.

As a proximate result of his ingestion of the trimethoprim, Wayne Van Natta suffered injuries. Due to these injuries, Judy Van Natta claims she has been deprived of the companionship, aid, services, affection and society of her husband.

---

[2] Doherty contends the Van Nattas signed an Authorization and Release form ("Release") that provides:

> I agree that any disputes that arise between me and NDS, its affiliates, related companies, subsidiaries, parent company, officers, directors, employees, agents and contractors shall be governed by the laws of the Province of Manitoba and the Laws of Canada applicable to such contracts and agreements.

Affidavit of Earl Doherty (docket no. 11), ¶ 20, Ex. B. The Van Nattas dispute they signed the Release. Doherty has not provided a signed copy of the Release. Viewing the facts in the light most favorable to the non-moving party, the court finds the Van Nattas did not sign the Release.

## IV. SUBJECT-MATTER JURISDICTION

The Van Nattas invoke this court's diversity jurisdiction because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). The Van Nattas are citizens of the state of Iowa, residing in Evansdale, Iowa. Fort Garry was organized under the laws of Manitoba, Canada and has its principal place of business in Manitoba, Canada. CanAmerica was organized under the law of the Bahamas and has its principal place of business in the Bahamas. Doherty is a resident of Manitoba, Canada. The court is satisfied it has subject-matter jurisdiction over this matter.

## V. LEGAL ANALYSIS

Doherty contends he has insufficient contacts with Iowa for this court to exercise personal jurisdiction over him. Doherty asks the court to dismiss all claims against him. *See* Fed. R. Civ. P. 12(b)(2).

### A. Legal Standards

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) (citing *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g., Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (recognizing same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (2005) (same); *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court only needs to examine whether the exercise of personal jurisdiction comports with due process. *Hicklin*, 959 F.2d at 739.

4

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, "[t]o satisfy due process[,] a defendant must have sufficient minimum contacts with the forum state[.]" *Romak*, 384 F.3d at 984. The contacts with the forum state must be more than "random," "fortuitous" or "attenuated." *Burger King*, 471 U.S. at 475; *accord Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (requiring contacts to be more than "random," "isolated" or "fortuitous"). "[T]he defendant's conduct and connection with the forum [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). There must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).[3]

After establishing a defendant purposefully established minimum contacts with the forum state, a court must still consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial

---

[3] The Supreme Court has distinguished between two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *See e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984). Specific jurisdiction refers to jurisdiction over causes of action "arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. On the other hand, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State [. . .] exercise[s] 'general jurisdiction' over the defendant." *Id.* at 415 n.9. When general personal jurisdiction is asserted, the non-resident defendant must be engaged in "continuous and systematic" contacts with the forum state. *Id.* at 416. The parties agree that specific jurisdiction—not general jurisdiction—is at issue in the Motion.

justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389-90 (8th Cir. 1991) (applying same two-step analysis). The Supreme Court has stated courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen*, 444 U.S. at 292).

Based upon Supreme Court precedents, the Eighth Circuit Court of Appeals instructs courts to consider five factors. *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983). Those factors are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998); *see, e.g., Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert denied*, 543 U.S. 1147 (2005). The first three factors are the most important. *Dakota Indus.*, 946 F.2d at 1390; *accord Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors."). The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987) (quoting *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1270 (8th Cir. 1978)). Few answers to jurisdictional questions "will be written in black and white." *Burger King*, 471 U.S. at 486, n.29 (internal quotation marks omitted).

The Van Nattas, the parties seeking to establish jurisdiction, bear the burden to prove it exists. *Romak*, 384 F.3d at 983-84. At this stage in the proceedings, the Van

6

Nattas need not prove the court may exercise jurisdiction over Doherty by a preponderance of the evidence. *Id*. at 983. Rather, to defeat the Motion, the Van Nattas need only make a *prima facie* showing of jurisdiction. *Id*. The Van Nattas may use affidavits, exhibits, or other evidence to meet their burden. *Id*. The court must review the evidence in the light most favorable to the non-moving party. *Id*.

With these principles in mind, the court examines whether a *prima facie* showing of jurisdiction exists.

### B. *Personal Jurisdiction Analysis*

The court first examines the nature, quantity, quality and relatedness of Doherty's contacts with Iowa. The undisputed evidence in the record shows Doherty (1) is a citizen and resident of Canada; (2) has never set foot in Iowa; (3) never received any payment for services rendered in Iowa; (4) has never owned any personal or real property in Iowa; (5) has only filled prescriptions in Canada; (6) has never conducted or solicited business in Iowa or any other state in the United States; (7) was not involved in the mailing, ordering, or solicitation of the Van Natta's prescription; and (8) filled the Van Natta's prescription solely because the Van Nattas placed an order for the prescription with Fort Garry.

In fact, the only contact relevant to this analysis is that one of the prescriptions Doherty filled for Fort Garry ended up in Iowa. Doherty has no other contact with Iowa because (1) Fort Garry, not Doherty, solicited Wayne Van Natta's prescription in Iowa; (2) Fort Garry, not Doherty, conversed with the Van Nattas prior to filling the prescription; and (3) Fort Garry, not Doherty, mailed the subject prescription to Wayne Van Natta in Iowa.

The Van Nattas argue Doherty's phone call to them also constitutes a "contact" bearing on personal jurisdiction. This is incorrect. Doherty placed the phone call to the Van Nattas after the accrual of the cause of action, so this phone call is therefore not

7

relevant to the court's personal jurisdiction analysis.[4]  16 *James Wm. Moore et al., Moore's Federal Practice* ¶ 108.42[2][a] (2007) (stating "The proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action. Later events are not considered."); *see also Harlow v. Children's Hosp.*, 432 F.3d 52, 60-64 (1st Cir. 2005) (finding jurisdictional evidence from time period after alleged medical malpractice was not relevant to specific jurisdiction analysis); *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D. Mich. 1996) (stating "minimum contacts are measured at the time that the underlying acts took place"); *cf. Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1396-97 (8th Cir. 1993) (stating "a court's *general* jurisdiction is not limited to causes of action accruing after the basis for general jurisdiction arose" (emphasis added)).

The deficiency in the quantity of Doherty's contact with Iowa weighs against the exercise of jurisdiction. *See, e.g., First Nat. Bank of Lewisville, Ark. v. First Nat. Bank of Clinton, Ky.*, 258 F.3d 727, 729-30 (8th Cir. 2001) (holding jurisdiction was lacking over defendant where defendant maintained no office or place of business in the forum state, did not solicit customers or business from the forum state and had no bank accounts or property in the state); *Bell Paper Box, Inc. v. Trans. W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (finding corporation's lack of physical presence in forum state weighed against exercise of jurisdiction). Additionally, the attenuated nature, quality and relatedness of Doherty's contact with Iowa weighs against the court's exercise of personal

---

[4] A personal injury cause of action accrues when the plaintiff has "actual or imputed knowledge of both the injury and its cause in fact." *Rathje v. Mercy Hosp.*, — N.W.2d —, No. 04-2081, 2008 WL 466701 at *17 (Iowa Feb. 22, 2008). By the time Doherty spoke with the Van Nattas on the telephone, the Van Nattas had already "found out Wayne [Van Natta] had been taking the wrong medicine." Affidavit of Judy Van Natta (docket no. 18), at ¶ 8. Because the Van Nattas knew of the injury and its cause both before calling Fort Garry with their concerns and before Doherty returned their call, the Van Natta's cause of action accrued prior to Doherty's call.

jurisdiction. What is most lacking in the nature, quality and relatedness of Doherty's contact with Iowa is the absence of evidence showing he purposefully availed himself of the laws of the State of Iowa. The Eighth Circuit Court of Appeals explained the purposeful availment requirement as follows:

> Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Soo Line R.R. Co. v. Hawker Siddeley Can., Inc.*, 950 F.2d 526, 528-29 (8th Cir. 1991) (internal citations and quotations omitted).

The Van Nattas argue purposeful availment exists because Doherty's negligent act had an effect in Iowa that gave rise to the cause of action. Often, the fact a defendant's actions have an effect on the forum state is sufficient to satisfy due process: "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Burlington Industries, Inc. v. Maples Industries*, 97 F.3d 1100, 1103 (8th Cir. 1996) (citing *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 n.4 (8th Cir. 1995)). This does not hold true, however, when the defendant's contact with the forum state is "random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party." *Guinness Import*, 153 F.3d at 614 (citing *Burger King*, 471 U.S. at 475). Stated another way, jurisdiction is proper "'where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state.'" *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690 at 694 (8th Cir. 2003) (citing *Burger King*, 471 U.S. at 475) (internal quotation marks omitted) (emphasis in original).

9

In this case, Doherty's contacts with Iowa are not the proximate result of his own actions; Doherty's contacts with Iowa are the result of another party, Fort Garry.

This case is similar to *Stanton*, where a Nebraska plaintiff sued St. Jude Medical, the Minnesota manufacturer of a heart valve that was implanted in the plaintiff's deceased husband. *Id.*, 340 F.3d at 693. The plaintiff also sued Spire, a Massachusetts corporation, which used its ion beam process to apply St. Jude's patented coating to St. Jude's heart valve. *Id.* The plaintiff sought to establish jurisdiction over Spire in Nebraska, contending "Spire should reasonably anticipate being haled into court anywhere in the United States because St. Jude placed a mechanical mitral heart valve which included a component part processed by Spire into the national stream of commerce." *Id.* at 694. The *Stanton* court declined to exercise jurisdiction over Spire, holding the plaintiff

> made no showing that Spire availed itself in any way of the benefits of the laws of the forum state. The fact Spire knew St. Jude distributed heart valves which were coated with St. Jude's product but applied by Spire does not demonstrate that Spire purposefully availed itself of the privilege of conducting activities in Nebraska. Whatever contacts the fabric processed by Spire may have had with Nebraska were the result of the actions of St. Jude and not of Spire.

*Id.* (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 104 (1987)) (internal citations omitted).

The same reasoning applies in the instant case. The fact Doherty may have known his employer, Fort Garry, distributed pharmaceutical products to Iowans does not demonstrate Doherty purposefully availed himself of Iowa's jurisdiction. Just as the contacts Spire had with Nebraska were the result of St. Jude's actions, any contact Doherty had with the State of Iowa was the result of Fort Garry's business dealings with the Van Nattas. When a defendant's actions resulting in the contact with the forum state are attributable to another party, the defendant did not purposefully avail himself of the laws

10

in the forum state. *Id.*; *see also In re Prempro Products Liability Litigation*, Nos. 4:03-CV-01507-WRW; 4:07-CV-00487-WRW, 2008 WL 150208, *2 (E.D. Ark. Jan. 14, 2008) (holding any contacts defendants had with the forum state were the result of the actions of the companies that hired the defendants—not the result of the defendants purposefully availing themselves of the laws of the forum state); *First Nat. Bank of Lewisville*, 258 F.3d at 728-30 (stating it was "a mere fortuity from the standpoint of [the defendant bank]'s role in issuing [a] cashier's check" that the parties to whom the check was made payable were residents of Arkansas); *Guinness*, 153 F.3d 607, 615 (8th Cir. 1998) (finding defendant did not direct its activities at forum state because it was entirely up to a third party whether the product at issue would be distributed in the forum state).

The court agrees that subjecting Doherty to jurisdiction merely because he filled a prescription Fort Garry happened to solicit from Iowa and mail to Iowa "would be like subjecting an employee of General Motors, who builds a car in Michigan, to jurisdiction in Iowa simply because the car was sent to Iowa and GM does business in Iowa." Doherty's Brief in Support of the Motion (docket no. 11), at 9. The fact jurisdiction exists over a non-resident entity is, in itself, insufficient to establish personal jurisdiction over that entity's agents and employees individually. *See Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 512 (S.D. Iowa 2007) (Gritzner, J.) (declining to exercise personal jurisdiction over non-resident entity's president, vice president and CEO emeritus when those individuals' contacts with the forum state were "sparse" even though jurisdiction was proper over entity).

The Van Nattas argue Doherty's professional designation as a pharmacist is somehow indicative of his purposeful availment of Iowa. The Van Nattas offer no legal citation for this proposition; indeed, no such legal authority appears to exist. When conducting a personal jurisdiction analysis on a "professional" defendant, courts do not appear to apply any special or additional rule. *See, e.g., Bullion v. Gillespie*, 895 F.2d

11

213, 217 (5th Cir. 1990) (finding personal jurisdiction over nonresident doctor when forum state patient had ongoing relationship with doctor and treatment occurred partly in forum state); *Pyle v. Hatley*, 239 F. Supp. 2d 970, 981 (C.D. Cal. 2002) (finding California could not exercise personal jurisdiction over physician because all physician's services were rendered outside California). Doherty did not purposefully avail himself of Iowa's laws.

The Van Nattas argue the fifth factor in the *Land-O-Nod* analysis, that is, the convenience of the parties, weighs in their favor because (1) all the Van Natta's witnesses live in Iowa and (2) travel for the Van Nattas to and from Canada would be inconvenient. While this might be true, the attenuated nature, quality, quantity and relatedness of Doherty's contacts outweigh this fifth factor. Also, in this case, the first three *Land-O-Nod* factors outweigh the fourth factor, Iowa's interest in providing a forum for its residents. *See Dakota Indus.*, 946 F.2d at 1390 (holding the first three Land-O-Nod factors are given more weight than the fourth and fifth factors).

In light of the fact that Doherty's single, attenuated contact with Iowa is exclusively attributable to Fort Garry's decision to do business in Iowa, Doherty did not purposefully avail himself of Iowa's laws, and he and could not have reasonably expected to be haled into court in Iowa. The court finds the Van Nattas have failed to set forth a *prima facie* showing of personal jurisdiction over Doherty.

### C. Alternative Argument

Doherty also argues his status as an employee in and of itself bars the court's exercise of jurisdiction over him pursuant to Iowa's fiduciary shield doctrine. Because the court already found Doherty's contacts do not satisfy due process, the court need not address this argument.

## VI.  CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED** that:

(1)  Defendant Earl Doherty's Motion to Dismiss for Lack of Personal Jurisdiction (docket no. 11) is **GRANTED**;

(2)  Defendant Earl Doherty is **DISMISSED** from this action without prejudice; and

(3)  In accordance with the court's January 31, 2008 Order, the parties shall file their proposed scheduling orders and discovery plans within thirty (30) days following the date of the instant order.

**IT IS SO ORDERED.**

**DATED** this 10th day of March, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA